## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | | |
| | * | |
| **vs.** | | **Case No 1:19-cr-00539-CCB-1** |
| | * | |
| **Jason Lawrence Green** | | |
| | * | |

******

## MEMORANDUM AND ORDER

This Court previously set forth the procedural history of this case in its April 2, 2020 order denying Defendant's Motion for Reconsideration of Detention, which is incorporated by reference. (ECF No. 21). That March 2, 2020 motion was premised on the proposal of a new third-party custodian, as well as arguments disputing some details of the Government's proffer. (ECF No. 18). On April 7, 2020, Defendant filed a Motion for Emergency Reconsideration of that order, raising concerns regarding the COVID-19 virus and the conditions of his detention at the Correctional Treatment Facility ("CTF") at the DC Jail complex.[1] (ECF No. 22). The government has filed its opposition responding to these new arguments. (ECF No. 24). Defendant has filed a reply. (ECF No. 25). The Court finds that no hearing is necessary. For the reasons set forth more fully below, Defendant's Motion is **DENIED**.

In its previous order, this Court, after carefully considering the Section 3142(g) factors of the Bail Reform Act, including the new information offered by Defendant at that time, denied Defendant's motion. Defendant's subsequent filings reiterate the arguments made in his original

---

[1] Defendant notes that these arguments would have been contained in a reply to the Government's opposition to his original motion, but the Court's ruling intervened. Because these arguments were new, the Court allowed the Government to file a second opposition.

motion such that the Court need not repeat its 3142(g) analysis again here.  Suffice it to say that those factors weigh strongly in favor of detention.

That said, this Court has previously recognized that the COVID-19 pandemic does satisfy Section 3142(f)(2)(B)'s "changed circumstances" definition such that this Court should add those considerations to its weighing of the other 3142(g) factors and perform an individualized assessment of the appropriateness of continued detention. *United States v. Martin*, 2020 WL 1274857 (D. Md. March 17, 2020).

In his latest argument, Defendant points to the growing number of COVID-19 positive cases at the DC Jail complex, including CTF.  (ECF No. 22 at 3-4; ECF No. 25 at 1-3). Defendant contends that CTF is therefore falling short of implementing the required preventive measures, as urged by several sources, most of which are aggregated in support of plaintiffs in *Banks v. Booth, et al*. (20-849-CKK), a class action lawsuit brought in U.S. District Court for the District of Columbia by detainees and inmates of the D.C. Jail Complex (including CTF) against the District of Columbia Department of Corrections and its officials regarding COVID-19 and seeking declaratory relief and *habeas corpus relief*.  (ECF No. 22 at 5-11; ECF No. 25 at 13). The union representing correctional officers at those facilities is also participating in that action.

Additionally, although Defendant makes no contention that he has personally been exposed to the virus, is experiencing any symptoms, or has been denied testing or COVID-19 treatment,[2] he cites his underlying health conditions of asthma, high blood pressure and chronic obstructive pulmonary disease as putting him at particular risk for complications should he

---

[2] Defense counsel states that he has received information that Defendant's asthma inhaler was taken from him and he has not gotten in back despite requests.  (ECF No. 25 at 10).  Counsel extrapolates from that that if Defendant did need COVID-19 testing or treatment, it would not be forthcoming.  The Court rejects this as speculative, especially given that the circumstances of the removal of Defendant's inhaler are unknown.

contract the virus.[3]  ECF No. 22 at 12-14.  Defendant also points to other court decisions where detainees and inmates at the DC Jail complex have been released due to COVID-19 concerns. *Id*. at 15-16; ECF No. 25 at 5.  Further, Defendant argues that his 5th and 6th amendment rights under the U.S. Constitution have been impaired, superseding the Bail Reform Act and mandating his release. (ECF No. 22 at 17-18; ECF No. 25 at 14-15).  Finally, in Defendant's reply, he alternatively argues that he should be temporarily released pursuant to Section 3142(i) of the Bail Reform Act.  (ECF No. 25 at 15).

For its part, the Government points to the measures undertaken by CTF to prevent, control and treat COVID-19.  (ECF No. 24 at 13-19).   It argues that any risk to Defendant is speculative and, in any event, far outweighed by the other factors of the Bail Reform Act.  It emphasizes another series of decisions where courts have detained individuals notwithstanding COVID-19 concerns, even where underlying health conditions were present.  *Id*. at 1-2 and 20. Finally, it disputes any constitutional issues given that Defendant cannot establish deliberate indifference on the part of CTF given the many measures undertaken and no particular lack of COVID-19 care to Defendant, and that any restrictions on the right to counsel are modest, temporary and necessary given the pandemic.  *Id*. at 18-19 and 22-24.

The Court first reiterates that it must make an individual assessment based on the unique circumstances that each case presents in weighing the 3142(g) factors and the COVID-19 issues.  Accordingly, decisions in other cases, while often helpful where clear parallels can be drawn, cannot replace that assessment.

---

[3] The Government questions the extent to which Defendant's underlying health conditions, some of which are not yet supported by medical records, put him at increased risk for complications.  For purposes of this motion however, the Court will assume that Defendant does have the underlying health conditions he lists that put him at increased risk for complications.

The Court has previously recognized that those in custodial situations—whether they be hospitals, nursing homes, or detention facilities—are at increased risk for contracting COVID-19 because of the difficulty of fully implementing public health advice in such settings given competing concerns such as security.   But there is still significant risk for contracting the virus in the community at large due to a lack of widespread testing capacity, compliance with social distancing directives, the inability to identify asymptomatic carriers and the prevalence of virus in the community (which can be difficult to ascertain).   Further, Defendant's underlying health conditions increase his risk of complications should he contract the virus either within or outside of CTF.  In short, release does not eliminate risk and the degree to which it reduces Defendant's risk is not known with any precision.  While it is tempting to say that comparing the number of identified cases at CTF to the number of cases in a given outside community defines that difference in risk, that would assume that the samples are representative and that testing and surveillance methods are equal, none of which is established.

As for the adequacy of the CTF response to the unprecedented pandemic, just as within CTF, the number of cases in the community at large, together with accompanying morbidity and mortality, continue to rise notwithstanding a full arsenal of preventive measures being implemented such that the Court cannot conclude from a rising number of positive cases that the measures being taken are inadequate.  The Court appreciates that there are competing assessments of the CTF response from credible sources.  The Court is aware that in the *Banks v. Booth* litigation referenced above, presiding Judge Colleen Kollar-Kotelly has ordered *amici* into the DC Jail complex to include CTF for inspection and fact finding, which hopefully will add greater clarity to conditions, response, and treatment availability.  But at this stage, the Court cannot conclude that those measures are constitutionally inadequate based on the record before it, especially where Defendant is not symptomatic and cannot point to a deprivation of COVID-

19-related medical care personal to him so as to begin to establish deliberate indifference. *See United Stated v. Gray*, 2020 WL 1554392 (D. Md. April 1, 2020).

Defendant's Sixth Amendment concerns are similar to those recently addressed by Judge Ellen Hollander of this Court in *United States v. West*, 19-ELH-364, ECF 33 at 10-11. There, Judge Hollander found the temporary restrictions at CTF reasonable and necessary in light of the pandemic and the fact that criminal proceedings in this Court have been continued through June 5, 2020 by Standing Order of this Court. *Id.*

As for temporary release under Section 3142(i), that provision permits "the temporary release of the person, in the custody of a United States marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason." As observed with regard to Defendant's Sixth Amendment claims, the restrictions imposed at CTF are reasonable, necessary, and temporary. Moreover, all cases have been postponed by this Court's most recent Standing Order through June 5, 2020. Thus, at least at this time, temporary release is not justified on the basis of preparation of his defense.

In terms of "other compelling need," in Section 3142(i), this provision has "sparingly" been used to justify temporary release for a specific medical treatment, such as cancer treatment. *United States v. Hamilton*, 2020 WL 1323036 (E.D.N.Y. March 23, 2020) at p. 3. In the context of COVID-19, *United States. v. Clark*, 2020 WL 1446895 (D. Kan. March 25, 2020), is instructive as it sets forth the following four factors to be considered: (1) The original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to

the defendant; and, (4) the likelihood that a defendant's release would increase the COVID-19 risks to others. *Id.* at p. 3. The Defendant has the burden on those factors. *See United States v. Sanders*, 2020 WL 1528621 (D. Kan. March 31, 2020) at p. 3.

As noted in this Court's previous order, the original factors for detention are strongly in the Government's favor. As in *Clark*, although Defendant does have underlying health conditions that may well increase his risk for complications should he contract the disease, the remainder of his argument is generalized. The remaining two factors depend in large part on how compliant Defendant would be with the directives of public officials and health experts should he be released. Given his poor prior track record with compliance on supervised release conditions, the Court has significant pause. Finally, Section 3142(i) contemplates release to a U.S. Marshal or other "appropriate person. The Court's previously expressed concerns in its original April 2, 2020 order regarding the ability of the proposed third-party custodians to ensure compliance disqualifies them from this designation.

In conclusion, in the context of the COVID-19 pandemic, Congress, through the Bail Reform Act, has tasked this Court with responsibilities to the community at large that go beyond COVID-19 such that the Court must give full consideration to *all* the consequences of a defendant's release as it impacts community safety. There were no 3142(g) factors in Defendant's favor so as to rebut the presumption of detention given the crimes charged. Defendant has performed very poorly on community supervision in the past, which gives the Court significant concern not only that he would comply with release conditions, but also that he would comply with advice from public officials and public health experts regarding COVID-19 precautionary measures. This is further exacerbated by the unavailability of 24/7 continuous electronic monitoring, especially in the setting of a defendant who was able to carry

out his alleged activity without detection by some of the same family members he now proposes for third party custodians.

Accordingly, Defendant's Motion for Emergency Reconsideration is **DENIED**.


 4/15/2020
Date

 /s/
J. Mark Coulson
United States Magistrate Judge